**BARRETT et al. v. BOARD OF COUNTY COM'RS OF TULSA COUNTY et al.**

No. 26895.    Feb. 7, 1939.

Rehearing Denied May 16, 1939.

C. N. Simon, for plaintiffs in error.

Holly L. Anderson, County Atty. of Tulsa County, Fred A. Fulghum, Asst. County Atty., and Conner & Winters, for defendants in error.

DAVISON, J. This case is presented to us on appeal from the district court of Tulsa county. It was instituted on the 20th day of June, 1935, by Otto Barrett and Blanch Barrett, as plaintiffs, against the board of county commissioners, the county treasurer, and county assessor of Tulsa county.

The plaintiffs sought to prevent by injunction the imposition and collection of an additional or supplemental assessment proposed to be made against their land by reason of its situation in what is known as Park View drainage district, No. 2, of Tulsa county. On August 2, 1935, the plaintiffs filed an amended petition, to which the defendants interposed a demurrer upon the grounds that the facts stated were insufficient to constitute a cause of action in favor of the plaintiffs. The demurrer was sustained. Upon plaintiffs' election to stand on their amended petition, the cause was dismissed. The plaintiffs appealed. They appear herein as plaintiffs in error. Our continued reference to the parties will be by the trial court designation.

From the amended petition of the plaintiffs the following alleged facts appear. At some time prior to 1929 (apparently in 1922, according to exhibits attached to plaintiffs' petition) Park View drainage district, No. 2, was created in Tulsa county, under the provisions of chapter 38, C. O. S. 1921. The costs of the drainage district, and the improvements created in connection therewith, were by special assessments imposed or attempted to be imposed upon the several tracts of land situated in said district. Bonds were issued to be paid from the proceeds of such assessments. A portion of the lands against which such special assessments were imposed were the property of full-blood Indians, and therefore not legally liable for the payment thereof. The plaintiffs purchased their land in 1929, subsequent to the creation of the drainage district.

The drainage district defaulted in the payment of some of the bonds which were the property of one Victor D. Winters. In 1932, he instituted an action in the District Court of the United States for the

Northern District of Oklahoma against the board of county commissioners of Tulsa county, its members as members thereof, the commissioners of said drainage district, and the county treasurer of said county to recover judgment on the bonds. The action was docketed as cause "No. 1485 equity." On the 7th day of April, 1932, judgment was rendered, the nature of which more fully appears from the following excerpt, quoted from the journal entry thereof:

"Said judgment being in the total sum of $15,952.85 and that said judgment bear interest at the rate of 6 per cent per annum from April 1, 1932, until paid and for costs in the sum of $66.85 said judgment not to be a general judgment against the said Tulsa county, but to be paid in the due course of the county's fiscal administration; that is, out of the funds arising from assessments now in process of collection and from such reassessments against the property benefited by the drainage ditch heretofore constructed by Park View drainage district No. 2 of Tulsa county, Oklahoma, as may be necessary to pay and retire this judgment, the said reassessment to be made in accordance with the provision of chapter 51 of Session Laws of Oklahoma for the year 1925 in the due administration of the district's affairs, the said board of county commissioners to have a reasonable and sufficient time within which to make any reassessment that may be necessary and within which to apportion said judgment against the lands, properties and corporate bodies in said drainage district and to certify the same to the county assessor and the said county assessor to have reasonable and sufficient time within which to extend upon the tax rolls opposite each lot, parcel or tract of land, the amount of taxes so apportioned to it by said county commissioners."

On the 18th day of July, 1932, the board of county commissioners of Tulsa county, claiming authority to act in accord with the command of said judgment and under authority of chapter 51, S. L. 1925 (sections 13028, 13029, O. S. 1931, sections 401, 402, title 82, Okla. St. Ann.), passed a resolution purporting to impose a second, and additional, assessment upon the plaintiffs' land to pay in part the judgment thus rendered.

The plaintiffs asserted in the trial court, and contend here in substance: First, that, independent of chapter 51, S. L. 1925, no authority existed for the imposition of an additional assessment on their land to cover the original cost of the drainage district improvement, for which an original valid assessment had been made; second, that such an additional assessment could not be made under chapter 51, S. L. 1925, supra,

for the reason that the same is unconstitutional and void; third, that the judgment of the federal court was insufficient to lend efficacy to the statute, because the plaintiffs were not parties to the federal court action.

The soundness of the first contention of the plaintiffs, as above set forth, is too well established in this jurisdiction to warrant an extended discussion. In general it has been the legislative policy of this state, as determined by this court on consideration of the statutes enacted by the lawmaking body, to limit the recourse of the holders of bonds, issued to cover the original cost of an improvement to be paid by special assessments against property within an improvement district, to the original assessments against such property. In other words, generally speaking, in this jurisdiction bonds to be paid from special assessments are not general obligations of an improvement district and cannot be made such by successive assessments against the same property. See Wrightsman v. Stevenson et al., 168 Okla. 63, 33 P.2d 499, and authorities therein reviewed. If any doubt ever existed that (under existing statutes) such was the law of this state as applied to drainage districts, it was forever dispelled by our discussion in Board of County Commissioners of Kiowa County et al. v. Kiowa National Bank of Snyder, 175 Okla. 3, 52 P.2d 777. In paragraph 2 of the syllabus in that case we said:

"Invalid assessments against restricted Indian lands included within a drainage district cannot be reassessed against other lands within the district against which there have been original valid assessments, for the purpose of paying the bonds issued against the drainage district."

The defendants urge a reconsideration of our holding in the above case, asserting that the provisions of the statute relating to drainage districts make the bonds general obligations of the district and authorize such a reassessment as is herein contemplated. Special emphasis is placed upon that portion of section 13027, O. S. 1931, reading as follows:

"* * * Provided, that in case any lands shall not be taxable in any proposed improvement district, the commissioners shall have power either to prorate the amount of assessments among the owners of such other lands in such improvement district subject to taxation, or pay the assessment on such nontaxable lands out of the county funds, or thus divide the payment until the lands aforesaid may be taxed, when said lands shall be made to bear their propor-

114

tion of expense, including interest thereon, and the same shall run against said lands until such indebtedness is discharged. * * *"

While this particular provision was not specifically quoted in the Kiowa Case, supra, it was before this court and received its due share of consideration. Defendants misapprehend its purpose. It provides a means for treating nonassessable lands in connection with making the original assessments, but when the original assessments have been made and their amount determined and fixed, the proviso loses its efficacy. It does not confer jurisdiction or power to make a second and supplemental assessment. Defendants also urge that the form of the bond as prescribed by section 13035, O. S. 1931, confers authority to render additional assessments. The form provides in part: "* * * for the levying of such other and further assessments as are authorized by law. * * *" This proviso constitutes no authority in itself, but merely contemplates the exercise of such authority as is conferred under other statutory provisions. Its probable reference is to the authority to make an "other or further" assessment against a particular piece of land in the event an original assessment against the same tract should prove invalid for some procedural reason. Certainly it cannot be given the effect which defendants urge. We decline to depart from our views as expressed in Board of County Commissioners v. Kiowa National Bank, supra.

What we have thus far said relates to the general provisions of the Drainage District Law, without reference to the effect, if any, of chapter 51, S. L. 1925 (sections 13028 to 13030, O. S. 1931). It is provided by section 13028, O. S. 1931, that:

"When a final judgment shall be rendered in any federal court based on original bonds or original warrants, against the drainage district, or against the board of county commissioners of any county where the same should be paid by such drainage district, no execution shall issue upon such judgment, but a tax sufficient to pay the same shall be levied upon all the lands, properties, and corporate bodies theretofore found to be benefited and assessed for the construction of the improvement of such drainage district, sufficient to pay such judgment, interest thereon and costs, and same shall be collected as other taxes, and when collected shall be paid by the county treasurer to the judgment creditor in the same manner as judgments against the county are paid and satisfied."

And by section 13029 that:

"In levying the tax herein provided for, the county commissioners shall apportion same against the lands, properties and corporate bodies in said drainage district in proportion to the assessments for benefits theretofore made and confirmed for the construction of the improvements of the drainage district in the first instance so that each parcel, lot or tract of land or benefited corporate body or property shall pay its proper proportion of such judgment."

The defendants contend that this case is removed from the operation of the rule announced in the Kiowa County Case, supra, because of the existence of the federal court judgment heretofore mentioned, which calls into operation and renders applicable the above quoted legislative provisions. This argument is sound unless, as plaintiffs contend, those statutory provisions are invalid upon constitutional considerations.

It should be noticed at the outset of our discussion on this point that the provisions of the statute as above set forth apply exclusively to federal court judgments, and that no corresponding provision is therein contained or elsewhere set out in our statutes giving or purporting to give a similar effect to the judgments of state courts. It should be remembered in this connection that the original jurisdiction of federal courts cannot always be invoked, since certain restrictions, such as want of diversity of citizenship or the sufficiency of the amount involved in the controversy, may preclude resort thereto. Thus in practical operation the statute does not purport to operate generally for the benefit of all bondholders or all persons obtaining or holding judgments against a drainage district. On the contrary, it operates exclusively for the benefit of those persons who by reason of their position are able to, and have invoked the original jurisdiction of the federal courts. A classification has thus been adopted which limits and restricts the operation of the law. Does the limited application of the law render it obnoxious to the provisions of our Constitution?

Section 46 of article 5, Oklahoma State Constitution, prohibits the passage of local or special laws "providing or changing the method for the collection of debts or the enforcement of judgments," and section 59 of article 5 provides, "that laws of a general nature shall have a uniform operation throughout the state and where a general law can be made applicable, no special law shall be enacted."

That the law now before us (chapter 51, S. L. 1925) is one providing methods for the collection of debts and the enforcement

of judgments is self-evident. Is it then a valid general law or an invalid special law?

It is not necessary, in order that a law be general and uniform in its operation (as contemplated by section 59, article 5, supra) as distinguished from special· (as prohibited by section 46 of article 5), that it operate universally and alike throughout the state upon all persons or things. On the contrary, the Legislature may by the adoption of a classification limit the scope of its application without offense to constitutional inhibitions, if the classification or limitation so adopted is nether arbitrary nor capricious, and bears a reasonable relation to the object of the legislation.

When a law which is not universal in its operation is adopted it must, in order to avoid the stigma of special legislation, satisfy the test adopted by this court in School District No. 85, Kay County, v. School District No. 71, Kay County, 135 Okla. 270, 276 P. 186, where we said in paragraph 4 of the syllabus:

"Local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they should naturally embrace. They create preference and establish inequality. They apply to persons, things, and places possessed of certain qualities or situations and exclude from their effect other persons, things, or places which are not dissimilar in this respect."

Similarly it was said in paragraph 1 of the syllabus in Roberts et al. v. Ledgerwood et al., 134 Okla. 152, 272 P. 448, that:

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination."

Does the act before us constitute special legislation within the tests prescribed by the foregoing decisions? Superficially the statute prescribes a special method for the enforcement of a particular class of judgments, namely those rendered by federal courts. Incidentally it may be noted at this point that the act neither attempts nor purports to authorize the federal court to adopt a different procedure in the collection of judgments than that which would otherwise obtain. Its directions go to county officials. It prescribes a method by which they shall act to enforce the judgments embraced within the provisions of the act. Their right and duty to act, if the law be valid, arises from the legislative mandate independent of any direction by the federal court. By the terms of the law, the federal court judgment is merely a prerequisite to an exercise of the power attempted to be conferred upon the county officials. Thus the law here involved is distinguished from those legislative acts which provide for variations in the procedure applicable to different classes of courts (as distinguished from courts of the same class) throughout the state which may be valid. See discussion in City of Sapulpa v. Land, 101 Okla. 22, 228 P. 640, 35 A. L. R. 872.

In addition to its superficial effect, the act has the deeper effect of providing a method for the collection of debts available only to those who are in a position to invoke the original jurisdiction of federal courts. We may assume, without deciding, that this limitation on the application of the law could be reconciled with the constitutional inhibitions under consideration, if equally efficacious methods were available for the collection of drainage district indebtedness by those not in a position to resort to the federal courts. Upon that we need express no opinion. For such methods are not available. Indeed the legislation is of deeper significance than a mere procedural statute, for it creates the substantive right of an additional assessment, a right which, as we have seen, does not otherwise exist; a right which is available to a favored class. Is there any reason why Richard Roe, a citizen of New York, owning limited liability special assessment bonds of the par value of $5,000, should be given the right to additional assessment when that right is denied to John Doe, an Oklahoma citizen, owning the same character of bonds of the par value of $500? Can such a discrimination and classification be upheld in the face of constitutional limitations upon legislative acts? We are of the opinion that it cannot, and so hold. The classification is arbitrary and capricious, and not based upon any **"Distinctive characteristic upon which a different treatment**

may be reasonably founded and that furnishes a practical and real basis for discrimination." The legislative act is special and unconstitutional.

Since the law is invalid upon the considerations above discussed, we need not consider it in the light of the due process and equal protection clauses of the federal Constitution (14th Amendment of the Constitution of the United States) and the due process clause of the State Constitution (section 7, article 2, Oklahoma Constitution).

The defendants contend that even though the law under consideration is unconstitutional and void, or otherwise insufficient and inadequate to authorize an additional levy, we are, in this case, foreclosed from considering the question by reason of the federal court judgment herein involved. They invoke the principles of res adjudicata and estoppel by judgment and assert that the adjudication of the federal court is immune from successful collateral attack.

The plaintiffs admit the validity and invulnerability of the federal court judgment in so far as it adjudicates the existence of an indebtedness against the drainage district, but deny its effectiveness to determine the liability of the land to be subjected to an additional and supplemental assessment, for the reason that they, the plaintiffs, were not parties to the action and had no notice thereof. They assert that the attempt to determine the liability of their property in that action was contrary to the protection afforded them under the due process clause of the United States Constitution (5th Amendment of the United States Constitution).

Plaintiffs' concession that the parties before the federal court were sufficient to authorize the adjudication of an indebtedness against the drainage district is well taken. It was so held by the Circuit Court of Appeals in Board of County Commissioners of Pottawatomie County, Okla., et al. v. Municipal Securities Co., 1 Fed. 2d 294. We agree with the holding in that case as to the sufficiency of parties to authorize the determination of an indebtedness, but express no opinion on the correctness of the decision in determining the existence of a valid indebtedness. It is to be noted, however, that the Federal Circuit Court of Appeals in the Municipal Securities Company Case, supra, was careful to circumscribe and limit the scope of its adjudication. It specifically repudiated that portion of the lower federal court's judgment in which

an attempt (similar to the attempt in the judgment now before us) was made to direct the manner in which the judgment should be satisfied. After some discussion, that portion of the judgment was disposed of in the following language:

"* * * It follows that all that part of the judgment entered in the trial court which goes beyond establishing the validity of the debt, and adjudging its payment in the due and orderly administration of the county's affairs, is in excess of the power of the court, and that part of the judgment must be reversed. * * *"

In the Municipal Securities Case, the scope of review was broader than in the case at bar, since the attack was on appeal and therefore direct as distinguished from collateral. The mere fact that the particular judgment under consideration was based upon an unconstitutional statute does not render it invalid on collateral attack. Jones v. McGrath, 160 Okla. 211, 16 P.2d 853. However, it does not follow that the portion of the federal court judgment called in question here is invulnerable when attacked collaterally. If that part of the judgment was in excess of the jurisdiction of the court, as well as erroneous, the purported effect of the same may be denied in this proceeding. In other words, the inquiry in a collateral attack is confined to the jurisdiction of the court, and questions relating to the proper exercise of jurisdiction are eliminated. Miller et al. v. Madigan et al., 90 Okla. 17, 215 P. 742; Protest of St. Louis-S. F. Ry. Co., 157 Okla. 131, 11 P.2d 189. One essential to the validity of the judgment is jurisdiction over the parties (Protest of St. Louis-S. F. Ry. Co., supra), and a judgment or a portion thereof which attempts to settle the rights of parties over whom the court has no jurisdiction is void as to such parties. It violates the due process clause of the United States Constitution.

In Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, the Supreme Court of the United States, speaking through Mr. Justice Holmes, said:

"Whatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no doubt that it embraces the fundamental conception of a fair trial with opportunity to be heard."

Similarly, on page 851 of Cooley's Constitutional Limitations (8th Ed.), it is said:

"But to render the jurisdiction of a court effectual in any case, it is necessary that the thing in controversy, or the parties in-

terested, be subjected to the process of the court. (Notice that some particular judicial proceedings are already instituted or proposed to be instituted, and of the time and place where such hearing is to be had, and reasonable opportunity to be heard, are essentials of due process of law)."

And in Moses H. Scott v. John H. McNeal et al., 154 U. S. 34, 14 S. Ct. 1108, 38 L. Ed. 896, Mr. Justice Gray, in speaking for the Supreme Court of the United States, tersely remarked:

"No judgment of a court is due process of law if rendered without jurisdiction in the court, or without notice to the party."

See, also, Seal v. Banes et al., 168 Okla. 550, 35 P.2d 704.

It is unquestionably true that for most purposes a judgment against a municipal corporation, or quasi-municipal corporation, is binding upon the citizens thereof and property owners therein. This is true in so far as the identity of individuals as citizens or property owners is merged with the identity of the corporation and adversity of interest does not exist between the corporation and the citizen or property owner. Thus far, and for such purpose, the individuals may be said to be before the court through their chosen representatives, but this form of jurisdiction is not without its limits, and it does not authorize the prejudging of a future contingent controversy embodying an adversity of interest likely to arise between the officers of the municipal corporation, acting as taxing authorities, and the individuals owning property within the corporate limits.

A somewhat analogous situation which (although not strictly in point) well illustrates the principle which was involved in the case of Seal v. Banes, supra, wherein it was held that, although the administrator of an estate ordinarily appears and proceeds before the county court in a representative capacity for the heirs as well as others, yet when he proceeds for the purpose of selling real estate to satisfy debts, an adversity of interest arises between himself in the representative capacity and the heirs, which, by reason of the requirements of due process of law, necessitates notice to the heirs.

So in the case at bar, when the officers charged with the duty of administering the affairs of the drainage district appeared for the purpose of defending against liability on the claim presented to the federal court, they may well be said to have appeared in a representative capacity, and their appearance vested the court with jurisdiction for the purpose of determining liability on the claim. But when the attempt was made to proceed further and determine the right of those officers to proceed against the property owners of the district under an unconstitutional law without notifying the property owners and giving them an opportunity to defend, the jurisdictional limits were exceeded and the due process clause stood as a silent "guardian angel" over the otherwise unprotected property owners, then blissfully unaware of the impending threat.

Particularly appropriate on this point is the language of the Supreme Court of the United States in Galpin v. Page, 18 Wall. 350, 365, 21 L. Ed. 962, as follows:

"It is a rule as old as the law * * * that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

In applying the foregoing principle to the case at bar, we have not overlooked those decisions holding that in matters of taxation as well as special assessments due process of law does not always require notice and an opportunity to be heard. Generally, the exception obtains **where such opportunity if afforded would be futile,** or where the exigencies of government in increasing the power to tax do not admit of delay and the act is legislative as distinguished from judicial or quasi-judicial. Hancock v. Muskogee, 250 U. S. 454, 63 L. Ed. 1081, 39 S. Ct. 528; Hagar v. Reclamation District, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569; Davidson v. Board of Administrators of New Orleans, 96 U. S. 97, 24 L. Ed. 616. However, the breadth of the exception must not be misapplied (see in this connection Bellingham Bay & British Columbia Railroad Company v. City of New Whatcom, 172 U. S. 314, 43 L. Ed. 460), and it cannot be made applicable to this case, for the judgment here involved is not legislative. The immediate exigencies of government are not involved, and a protest on the part of the property owner would not be futile, since, as we have seen, the law is unconstitutional.

The situation here presented is comparable to an attempted increase of the tax burden on property by an attempted increase of the assessment after it has been

118

made by the assessor, of which it is said generally in treating of the necessity of notice in 12 Am. Jur. 334, par. 642 (subject "Constitutional Law"), as follows:

"It is a general rule that 'due process' requires that after an assessment has been made by an assessor, it cannot be increased by a reviewing board without notice to the taxpayer or opportunity to be heard. Hence, a statute giving a reviewing board power to increase individual assessments without notice to the taxpayer or provision for review is unconstitutional as denying due process. The law authorizing such proceedings must require notice or it will be unconstitutional. It is not enough that a person may by chance have notice or that he may as a matter of favor or courtesy have a hearing. A statute giving to a tax commissioner power to increase individual assessments, without providing for notice to the taxpayer other than is given by the fact that the time of the meeting of the commission is fixed by law, does not afford the notice necessary to due process. * * *"

The judgment here involved was rendered in a proceeding in which the plaintiff property owners were not parties. In so far as it attempted to increase the burden on their property by authorizing an additional assessment under an unconstitutional law and thus prejudge their rights, it is a nullity.

This cause is reversed, with directions to the trial court to overrule the demurrer to plaintiffs' petition and proceed in a manner not inconsistent with the views herein expressed.

BAYLESS, C. J., and RILEY, OSBORN, CORN, GIBSON, and DANNER, JJ., concur. HURST, J., disqualified.