Jewel GRISHAM, Plaintiff in Error,

v.

COMMISSIONERS OF the LAND OFFICE of the State of Oklahoma, Defendants in Error.

No. 37876.

Supreme Court of Oklahoma.

March 18, 1958.

Rehearing Denied April 15, 1958.

George Bingaman, Purcell, for plaintiff in error.

R. H. Dunn, A. M. DeGraffenried, N. A. Gibson, Oklahoma City, for defendants in error.

HALLEY, Justice.

Jewel Grisham, the owner of bonds Nos. 102 and 114, both inclusive, in the amount of $1,000 each, being all of the outstanding bonds in Walnut Creek Drainage District No. 1, McClain County, filed this action in the District Court of that County, against the Commissioners of the Land Office, referred to as Commissioners. Jewel Grisham will be referred to as plaintiff. A brief recital of events occurring prior to the filing of this action is deemed necessary to a clear understanding of the issues involved.

On September 15, 1928, the land involved was owned by Amelia J. Gibbons, and on that date she and her husband mortgaged the land to the Commissioners of the Land Office to secure a note for $8,000.

February 27, 1930, the above Drainage District was created and assessments for benefits were levied on March 2, 1931. Bonds were issued and the plaintiff here owns all of such bonds which are outstanding and unpaid.

July 14, 1932, the Commissioners filed a foreclosure action on their mortgage and secured a judgment thereon on November 16, 1936. In the foreclosure action neither the bondholder, Jewel Grisham nor any one in privity with her was a party. March 10, 1942, the land was sold to the Commissioners at sheriff's sale and they have since held title for the State.

None of the Drainage District bonds on the land in question were paid, and the Commissioners refused to pay any part thereof, claiming to own the land free and clear of the drainage assessments, represented by the bonds held by plaintiff.

Plaintiff instituted an action in reverse condemnation, but this Court in State ex

rel. Commissioners of Land Office v. Grisham, 200 Okl. 621, 198 P.2d 419, held against plaintiff on appeal from the District Court, July 13, 1948.

Undisputed evidence showed that the land had a value of $200 an acre, and plaintiff offered to redeem by paying the full amount of the mortgage indebtedness, or, in the alternative to accept from the Commissioners payment of the amount of drainage assessments, plus interest, from February 27, 1930, when drainage assessments were made, but such offer was refused.

The case under consideration was tried November 27, 1956, and on April 3, 1957, judgment was rendered for defendants upon the finding and conclusion that plaintiff had an adequate remedy at law by tax sale and resale. Motion for new trial was denied May 8, 1957, and plaintiff has appealed.

Plaintiff asserts that the sole question here presented is:

"May the Commissioners of the Land Office, without the knowledge of, or notice to the drainage bondholder, or to any person or official in privity with her, foreclose on lands encumbered by drainage assessments take title and possession by sheriff's deed and thereby cancel and extinguish unpaid drainage assessments. * * *"

She asserts that if not, the remedy of sale and resale not being available on State owned lands, the bondholder may resort to equitable relief provided by statute to marshal the security and enforce payment of her liens.

It is alleged by the plaintiff that prior to the drainage assessments, the land was mortgaged to the Commissioners and that its value was greatly enhanced by the construction of the drainage district; that in fact such increase was greater than the amount of the assessments.

Plaintiff submits as her first proposition the following:

"Neither the bondholder nor any person in privity with her was a party to the foreclosure suit, therefore, the judgment and Sheriff's Deed did not foreclose her rights."

■ It is undisputed that the only party defendant in the mortgage foreclosure by the Commissioners was the original mortgagor. The bondholder, the plaintiff here, nor any one in privity with her, and no official was a party defendant. It does appear that the County Treasurer of McClain County was named as a party defendant but the action as to the Treasurer was dismissed before judgment was taken. The rule is well established that the rights of one not a party cannot be adjudicated when they are not a party to the action. As said in Barrett v. Board of County Commissioners, Tulsa County, 185 Okl. 111, 90 P.2d 442, 443:

"A judgment or portion thereof which attempts to settle the rights of parties over whom the court has no jurisdiction is void as to such parties."

The drainage assessments were subsequent to and inferior to the mortgage foreclosed by the Commissioners and could not be affected by the foreclosure action in which the drainage bondholder was not a party. It was said in First National Bank & Trust Co. of Oklahoma City v. Stark, 207 Okl. 183, 249 P.2d 117, 118, as follows:

"* * * In other words, as between the owner of the mortgage and a subsequent owner of an interest in the realty who was omitted from, and in no way bound by, the foreclosure judgment, the situation is the same as though no legal proceeding had been had. * * *"

■ Clearly the drainage assessment lien was not foreclosed by judgment, but defendants here contend that they have been extinguished by the sheriff's deed under section 151, 64 O.S.1951, and cites State ex rel. Com'rs of Land Office v. Continental Oil Co., Okl., 273 P.2d 1002. We note that ad valorem taxes were involved in that case. Section 151, supra, does not cancel drainage assessments. It does pro-

vide that after foreclosure and the property foreclosed is purchased for the State, that such property shall be removed from the taxable property list, and that all delinquent taxes assessed against it, and all tax certificates and deeds based upon such delinquent taxes are cancelled and nullified. We think that the taxes cancelled by section 151 are only ad valorem taxes. The difference between ad valorem taxes and drainage assessments has been pointed out in numerous cases, which is shown by the following:

"* * * Taxes are imposed for general revenue, assessments for public improvements mainly locally beneficial. * * *" Flansburg v. Shumway, 117 Neb. 125, 219 N.W. 956, 958.

"* * * There is a wide difference in law between a tax and an assessment. * * * Therefore an assessment or special assessment is not embraced within the meaning of the word 'taxation,' * * *." In re Walker River Irr. Dist., 44 Nev. 321, 195 P. 327, 330.

"* * * An assessment, wholly dependent on the benefits to accrue, is not a tax * * * but a charge in rem against the special tracts of land assessed for benefits." Reynard v. City of Caldwell, 53 Idaho 62, 21 P.2d 527, 528, 90 A.L.R. 1124.

■ The plaintiff contends that although the Legislature could extinguish the lien for taxes of the State and its subdivisions, it possesses no such right in so far as the liens for assessments, as are involved here, since these could not be extinguished because they do not belong to the State and the Legislature could not release them without payment or notice for the reason that would be taking private property without due process of law in violation of both the State and Federal Constitutions. Const. art. 2, § 7; U.S.Const. Amend. 14. We agree with this contention.

The plaintiff points out that the land involved here is the only land in the drainage district on which assessments have not

been paid and is the only land in the district to which she may look for the payment of her bonds.

Plaintiff also cites Mantooth v. Colbert, 178 Okl. 395, 62 P.2d 1235, 1237, involving a suit to quiet title and cancel drainage assessments. The county treasurer and other county officials were made parties defendant. T. H. White intervened as the owner of bonds issued by the district and secured by assessments. The Court said:

"* * * That T. H. White was a proper party to intervene was properly determined. The very nature of the action makes the intervener a proper party. The right is statutory. See sections 157, 158, O.S.1931; also, section 162, O.S.1931. But even if it were not statutory, the cause being by its nature equitable, the court should permit the bondholders to intervene. We therefore hold that the intervener, T. H. White, was a proper party to this proceeding."

The right of a bondholder to be a party under similar circumstances is also recognized in Alford v. Kerbo, 186 Okl. 384, 98 P.2d 614, 615, in the following language:

"The Fidelity National Bank of Oklahoma City, owner of a large block of the bonds of said Drainage Ditch, upon leave of court, intervened and is herein considered and referred to as a party defendant, and the principal defense is made by said defendant."

To the same effect this Court recognized the right of a bondholder to intervene in Hine v. Board of Com'rs of McClain County, 188 Okl. 260, 108 P.2d 112.

It is also pointed out that section 170, 12 O.S.1951, provides that service by publication may be had upon unknown bondholders of special assessment and improvement bonds. To hold otherwise would deprive bondholders of their day in court by excluding them as was done in the case before us.

■ Plaintiff admits tax sale and resale is the remedy provided by statute for collecting drainage assessments, but asserts

that this remedy is not available on State-owned lands, and that where such a legal remedy is not available, our statutes vest in our district courts, an equitable remedy to protect a bondholder's rights.

Section 185, 64 O.S.1951, expressly provides that:

"* * * no tax deed shall be issued upon any tax certificate procured under the provisions of this Article, while legal title to said lands remains in the State of Oklahoma."

This Court has held that this special statute supersedes the general tax law and that a tax deed cannot be issued on the land. In Montague v. State, 184 Okl. 574, 89 P.2d 283, 286, it was said in the body of the opinion that:

"* * * the land in question was subject to taxation, but the issuance of a tax deed thereon is specifically prohibited, and such a deed, when issued, is void. * * *"

Section 338, 82 O.S.1951, provides in part that where the proceedings for the collection of delinquent taxes are insufficient to provide for the collection of delinquent drainage assessments. the district court may enforce collection thereof. It is said in part as follows:

"* * * and wherein such proceedings may be insufficient, the Commissioners of the Land Office and the district court of the county in which such land is situated may perform such acts and exercise such jurisdiction as may be essential or convenient to accomplish the enforcement of such liens and the collection of such assessments, interests and penalties; * * *"

It should be kept in mind that the interest coupons on the bonds held by plaintiff were paid as they matured, and that the bonds matured on February 1, 1943. The Commissioners were then in possession of the land under foreclosure sale. The plaintiff erred in instituting a reverse condemnation action upon the theory that the lands had been taken for public use. This theory was denied by this Court in State ex rel. Com'rs of Land Office v. Grisham, supra. Plaintiff then instituted the present action.

Section 338, supra, also provides that drainage district assessments are perpetual and "* * * constitute a lien to which only the lien of the state, county and municipality for taxes shall be paramount, upon the lands and crops * * *." This section also provides as follows:

"* * * all public lands belonging to the State of Oklahoma, which may be situated within the limits of any authorized drainage district, shall be subject to assessment for benefits and allowances for damages the same as lands owned by private persons, and such assessments shall draw interest at six per centum per annum until paid; and such assessments shall constitute, until fully paid, a lien to which only the lien of the state for rents, sales price and interest, and the liens of the state, county and municipality for taxes shall be paramount upon all crops produced upon the land, and upon the land subject to the interests of the state and the taxes aforesaid; * * *"

It is well established that public lands cannot be sold at tax sale, and here it is clear that the plaintiff has no adequate remedy at law. For this reason the plaintiff claims that she has the right to resort to equity to have whatever equity there may be in this property, after the State is paid in full, applied to the payment of the drainage district assessments securing her bonds.

Plaintiff introduced evidence at the trial to show that the property was enhanced in value until it has sufficient value to pay the State in full and then to satisfy her claim. This is not disputed.

Since we believe that the plaintiff or some one in privity with her should have been made a party to the foreclosure action by the Commissioners, and that such failure had no effect whatever upon her rights as a holder of the drainage district bonds, which are perpetual, she is now entitled to resort to equity for relief. The land has been held by the State since the foreclosure

judgment and cannot now be sold for ad valorem taxes. She should not be deprived of her right to whatever remedy a court of equity finds proper and just.

Defendants cite many cases from other states but we do not find it necessary to consider them in view of our decision above.

The judgment is reversed and the case remanded with instructions to proceed in accordance with the views herein expressed.