Sam K. VIERSEN, R. W. Viersen, Edith Viersen Terry and The Central National Bank of Okmulgee, Oklahoma, Plaintiffs in Error,

v.

Henry F. BOETTCHER and Catherine Boettcher Converse, Defendants in Error.

No. 39788.

Supreme Court of Oklahoma.

Nov. 19, 1963.

Smith, Inglish & Gray, Okmulgee, Royse & Meacham, Elk City, for plaintiffs in error.

J. Scott Vincent, Cheyenne, for defendants in error.

JACKSON, Justice.

In the trial court, plaintiffs Henry Boettcher and Catherine Boettcher Converse sued the defendants, Sam K. Viersen, R. W. Viersen, Edith Viersen Terry, the Central National Bank of Okmulgee, Oklahoma, and the Cal-Cul Oil Company, a "cancelled corporation", in an action to quiet their title to the mineral (royalty) interest under a described quarter section of land in Roger Mills County. The Cal-Cul Oil Company filed no answer and took no part in the proceedings in the trial court and did not appeal; the other defendants filed an answer in the nature of a general denial, and a cross petition in which they claimed an undivided one-half mineral interest in the lands concerned and asked that their title be quieted. Both plaintiffs and defendants pleaded that they were in possession, and based their claims upon separate chains of title to be hereinafter described. We will continue to refer to the parties as they appeared in the trial court, or by name.

Most of the facts were stipulated. In 1922 the then owner of the entire interest in the premises mortgaged the same to the Federal Mortgage Loan Company, and the mortgage was thereafter assigned to William Sharp. In 1930 the then owners of the premises, subject to the mortgage, sold an undivided one-half interest in the minerals (hereinafter referred to as the severed minerals), and such interest descended by mesne conveyances to the Cal-Cul Oil Company. In 1933 the Cal-Cul Oil Company was adjudged a bankrupt in proper proceedings in the United States District Court, and a trustee in bankruptcy was appointed. In the schedules filed by or on behalf of the bankrupt, the severed minerals were listed as an

asset of Cal-Cul, but apparently there was no notation that they were subject to a prior mortgage. In 1937 the trustee, after proper proceedings, sold "all of the assets" of the bankrupt, including the severed minerals, to some of the defendants in this case. The holder of the mortgage was not served with any notice of the bankruptcy proceedings, or of the trustee's sale in connection therewith. The claims of defendants herein rest upon the validity and effect of the trustee's sale, under which they claim.

In 1935, William Sharp, the holder of the mortgage previously mentioned, instituted mortgage foreclosure proceedings in the district court of Roger Mills County. Mr. Sharp apparently had no actual knowledge of the bankruptcy proceedings, and no service of notice of the mortgage foreclosure proceedings was had upon the trustee, although there was a personal service of notice upon the president of the bankrupt Cal-Cul Oil Company. The sheriff's sale, pursuant to the mortgage foreclosure judgment, was not had until 1938, and the trustee in bankruptcy had no notice of the sale. Plaintiffs herein claim under the sheriff's sale.

Judgment of the trial court was for plaintiffs and defendants appeal. They here argue several propositions, all of which concern the relative effect and validity of the two sales under which the parties claim.

■■ Since the 1937 trustee's sale was first in point of time, we will consider it first, and in that connection we take note of the following well established rules with regard to federal court bankruptcy proceedings and sales:

"The rule 'caveat emptor' prevails in bankruptcy sales, as in all judicial sales, unless special direction otherwise is made in the order of sale. Generally, unless the sale is specifically free from liens, only such rights, title and interests as the bankrupt held and owned at the time of his adjudication in bankruptcy, and as passed on to the trustee, are acquired, subject to any outstanding liens, charges or encumbrances valid and enforceable as against the trustee." Remington on Bankruptcy, Vol. 6, Sec. 2569.

"If the sale is not expressly ordered to be free and clear of liens, it is a sale subject to liens." Remington on Bankruptcy, Vol. 6, Sec. 2576.

" * * * the trustee has no superior rights or greater interest in the property and occupies no better position with respect thereto than the bankrupt. * * * the trustee takes the property, not as an innocent purchaser for value, without notice, but as the debtor had it at the time of bankruptcy, subject to all valid claims, liens, and equities." 8 C.J.S. Bankruptcy § 199.

"A purchaser from the trustee in bankruptcy takes no better title than the bankrupt or trustee had." Higgs v. Renfrow, 195 Okl. 545, 159 P.2d 749.

" * * * Title to assets vests in the trustee on filing of a petition under the Act, and that title is not subject to divestiture by judgment in an action against the bankrupt, commenced after bankruptcy, to which the trustee is not a party." Remington on Bankruptcy, Vol. 3, Sec. 1402; Hull v. Burr, 61 Fla. 625, 55 So. 852, 26 ABR 897.

■■ Under the above rules of law and the undisputed facts in this case, it may be said that the trustee's sale had exactly the same effect as if the bankrupt corporation itself had sold the severed minerals prior to the adjudication in bankruptcy. Insofar as the question of title is concerned, the trustee in bankruptcy stood in the shoes of the bankrupt, and took no better title than the bankrupt had. It is conceded that the bankrupt corporation held the severed minerals subject to the prior mortgage; the trustee sold it the same way. It is not alleged, and the record does not show, that the order authorizing the trustee to sell the severed minerals *specifically* directed him to sell them free of liens or encumbrances, or that the trustee's sale was had with the consent of the mortgage holder.

We therefore hold that the purchasers at the trustee's sale, and those claiming under them, held the severed minerals here concerned subject to the prior mortgage. Such being the case, the mortgage, with the related right to foreclose upon non-payment of the debt it secured, was still valid as to the severed minerals.

We now consider the 1938 sheriff's sale pursuant to the mortgage foreclosure proceedings. At that time, title to the severed minerals had passed from the bankrupt corporation to the trustee in bankruptcy, and from the trustee to the purchasers at the trustee's sale. It is undisputed that no notice of the mortgage foreclosure proceedings, or of the resulting sale, was served upon the trustee in bankruptcy or his successors in interest.

It is well settled that when a real estate mortgage is foreclosed by action, and the owner of an interest in the property is not made a party defendant, the interest of such owner is not foreclosed. Rives v. Stanford, 188 Okl. 108, 106 P.2d 1101. The same rule is applicable where the separate interest consists of a severed mineral interest. Deruy v. Noah, 199 Okl. 230, 185 P.2d 189.

Since defendants herein, claimants under the trustee's sale, were not parties to subsequent mortgage foreclosure proceedings and sheriff's sale, we hold that their severed mineral interest was not foreclosed thereby, and that plaintiffs herein, claimants under the sheriff's sale, acquired no interest therein.

In their answer brief filed herein, plaintiffs in the trial court (defendants in error herein) present counter propositions to the general effect that (1) the foreclosure judgment is not void on the face of the judgment roll and cannot be collaterally attacked in this action, and (2) therefore, the defendants below are barred by the 5 and 15 year statutes of limitation.

While it is generally true that a judgment which is valid on its face may not be "collaterally attacked", plaintiffs overlook the fact that it was the plaintiffs who put the validity of the mortgage foreclosure proceedings in issue in this case. They asserted the validity of the foreclosure proceedings and sheriff's deed in their petition as the basis of their title, and introduced the mortgage foreclosure proceedings in evidence in support of their pleadings; the validity of which was denied by defendants by appropriate pleadings. In Mayfield v. L. V. French Truck Service, Inc., Okl., 369 P.2d 461, we said that the jurisdiction of any court exercising authority over any subject may be inquired into in every other court when the proceedings of the former are relied on and brought before the latter by a party claiming the benefit of such proceeding.

As heretofore observed, the trustee in bankruptcy was not a party to the mortgage foreclosure proceedings and had no notice thereof. We think it follows that the foreclosure proceedings as to the trustee, and those claiming under him, were void. Barrett v. Board of County Com'rs of Tulsa County, 185 Okl. 111, 90 P.2d 442; Greco v. Foster, Okl., 268 P.2d 215; and Grisham v. Commissioners of the Land Office, Okl., 324 P.2d 278.

On the question of whether the defendants are barred from recovery on their cross-petition by the limitation provisions contained in 12 O.S.1961 § 93(1), we are of the view that they are not. The Cal-Cul Oil Company was adjudged a bankrupt in 1933, and the title to these severed minerals vested in the trustee in bankruptcy at the time the petition in bankruptcy was filed. Remington on Bankruptcy, Vol. 3, Sec. 1042, supra; Hull v. Burr, 61 Fla. 625, 55 So. 852, 26 ABR 897, supra. The petition for mortgage foreclosure was filed in Roger Mills county on January 7, 1935; alias execution was issued on January 12, 1938; and the mortgaged land was sold on execution sale on February 21, 1938. We think these facts bring this proposition within the rule announced in the second paragraph of the syllabus in Walden-Page

Memorial Hospital v. Bentsen, Okl., 370 P.2d 5, wherein we held:

"12 O.S.1951 § 93(1), is not applicable to an action in ejectment brought by a grantee of a prior mortgagor, which mortgagor thereafter became the execution debtor in a mortgage foreclosure proceeding, where the title of such grantee was acquired *before* the commencement of the foreclosure proceeding, and the grantee was not a party to the foreclosure proceeding."

We do not find that defendants' cross-petition, to quiet their title to the severed minerals, is barred by the 15 year limitation period provided for in 12 O.S. 1961 § 93(4). It is not contended that the mineral deed which severed the minerals is ambiguous. The Cal-Cul Oil Company went into constructive possession of this mineral interest when the mineral deed was executed and delivered. Maloy v. Smith, Okl., 341 P.2d 912. The Cal-Cul Oil Company and its successors in interest, which include the defendants herein, thereafter remained in continuous constructive possession until defendants' cross-petition was filed. In Warner v. Mason, 109 Okl. 13, 234 P. 747, we held that an action to quiet title, where the plaintiff has been in continuous possession of the property, claiming ownership therein, can be maintained at any time, and no statute of limitation bars his right to the relief sought. We think this rule is applicable here.

The plaintiffs, in an effort to show a claim of adverse possession of the severed mineral interest, offered in evidence copies of oil and gas leases covering the premises which were executed in 1947 and 1960 by the plaintiffs, as well as the testimony of agricultural or farm tenants who testified that they had been in possession of the property during substantial periods of time under leases from the fee owners. The execution and recording of oil and gas leases by a mineral co-tenant, standing alone, will not support a claim of adverse possession to severed mineral which are owned by and in the constructive posses-

sion of another. See 35 A.L.R.2d 178, and cases there cited. Possession of the surface by the surface owner constitutes no noticeable claim of adverse possession to the owner of the mineral estate. Strickland v. Reeburg, Okl., 362 P.2d 1110; Douglass v. Mounce, Okl., 303 P.2d 430.

In summary, we hold that the 1937 trustee's sale, under which defendants claim, having been had without notice to, or service upon the holder of the prior mortgage, was not effective to foreclose the interests of the mortgage holder against the severed mineral interest. However, the 1938 sheriff's sale, conducted pursuant to the mortgage foreclosure proceeding in which the defendants and their predecessors were not made parties, was not effective to divest defendants of their severed minerals.

We are aware of the 1938 amendment of the Bankruptcy Act, commonly called the Chandler Act, which provides for the recording of the petition, decree of adjudication, or order approving trustee's bond, in every county where the bankrupt owns real property, and further provides that " * * * Unless a certified copy of the petition, decree, or order has been recorded in such office, in any county wherein the bankrupt owns or has an interest in real property *in any State whose laws authorize such recording*, the commencement of a proceeding under this title shall not be constructive notice to or affect the title of any subsequent bona-fide purchaser or lienor of real property in such county * * *". (emphasis supplied.) However, the Chandler Act was not effective until September 22, 1938; and Oklahoma laws did not authorize the filing of such instruments until 1945. 19 O.S.1961 §§ 262 and 263. In the case now before us, the trustee's sale was completed, and the trustee's deed was recorded, in 1937; the sheriff's sale was completed, and the deed recorded, in April, 1938. The purchaser at the sheriff's sale was the mortgagee, and the plaintiffs in the instant case claim their interest in the premises under a quit claim deed from the mortgagee-purchaser to their father in 1941.

Whether the mortgage may still be foreclosed as against the severed mineral interest was not presented as an issue in this case, and we express no opinion in regard thereto.

As to an undivided one-half interest in the minerals, the judgment in favor of the plaintiffs is affirmed; as to the other undivided one-half interest in the minerals (the severed minerals), the judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for defendants quieting their title to such interest, subject to whatever rights the plaintiffs may have, if any, under the mortgage.

Or, if appropriate pleadings are filed, and the trial court so elects, the court may, upon notice and hearing, determine whatever rights the plaintiffs may, or may not, have under the mortgage, and enter judgment thereon, concurrently and consistent with the judgment heretofore ordered to be entered upon remand.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON and JOHNSON, JJ., concur.

WILLIAMS, IRWIN and BERRY, JJ., dissent.

IRWIN, Justice (dissenting).

In the instant action we are concerned with the force and effect of a bankruptcy proceeding pending in the U. S. District Court of the Eastern District of Oklahoma against a mortgage foreclosure in Roger Mills County where there was nothing filed of record in Roger Mills County disclosing or suggesting that the bankruptcy proceedings were pending against one of the record owners of the minerals foreclosed in the foreclosure proceedings.

In my opinion, the Journal Entry of Judgment and Decree of Foreclosure entered by the District Court of Roger Mills County on July 25, 1936, was valid and binding against Cal-Cul Oil Company, a bankrupt, its Trustee in Bankruptcy and as-

signs. My opinion is premised upon the following reasons.

When the foreclosure proceedings were filed and the Decree of Foreclosure entered, the records of Roger Mills County disclosed that Cal-Cul Oil Company was the owner of the minerals. There was nothing on record in Roger Mills County which would disclose or even suggest that bankruptcy proceedings were pending against Cal-Cul in the U. S. District Court of the Eastern District of Oklahoma. Therefore, the foreclosure proceedings were valid and binding in every respect unless the Bankruptcy Act superseded our recording statutes and the bankrupt proceedings, in and of itself, operated to give constructive notice that title to the minerals was vested in the Trustee in Bankruptcy, by operation of law, and not in Cal-Cul, the bankrupt.

In 1938, Congress enacted the Chandler Act, which, inter alia, amended the Bankruptcy Act by adding a certain section, hereinafter referred to as Sec. 21(g). This section gives protection to a person dealing with real property of the bankrupt on the strength of his record title, without notice of the bankruptcy proceedings, unless certified copies of the petition, order of adjudication, and the order approving the trustees bond are recorded in the county where conveyances would be recorded. I am cognizant of the fact that this section can not be relied on in the instant action for the reason the foreclosure proceedings and bankruptcy proceedings all transpired prior to the 1938 amendment. However, in my opinion, the bankruptcy laws in force and effect when these proceedings transpired, gave protection to a person dealing with real property of the bankrupt on the strength of the record title in the county, who had no notice of pending bankruptcy proceedings.

Remington on Bankruptcy, Volume 3, Sec. 1381.1, at page 268, in discussing the Chandler Act of 1938 states: "Sec. 21(g) is fundamentally a codification of existing law, under which it was held that the filing of a bankruptcy petition could not, in and

of itself, supersede recording and title registration legislation of the various states." As authority for this statement, Remington cites sec. 1393, of the same volume, at page 286, wherein it is stated:

" * * * In essence, § 21(g) leaves local recording acts, requiring the recording of instruments affecting title to realty in order that the transaction shall be of force as against a subsequent bona fide purchaser or encumbrancer on the strength of title appearing of record, in full effect, notwithstanding the filing of a bankruptcy petition with the clerk of a federal district court and unless and until certified copies of the petition, order of adjudication, and order approving the trustee's bond are recorded in the proper office in the county where the land is situate. *The statute was introduced by 1938 amendment, but it accords with the theory of earlier decision that the Bankruptcy Act was not intended to, and and did not, upset state recording and title registration laws.*" (emphasis added)

The case of Vombrack v. Wavra, 331 Ill. 508, 163 N.E. 340, promulgated by the Supreme Court of Illinois in 1928, is cited by Remington as authority for the above statement. In that case the Court said:

"By section 70 of the Bankruptcy Act (9 U.S.Comp.Stat.1916 Ann. p. 11719; 11 USCA §§ 110) the title of the trustee in bankruptcy to the property of the bankrupt not exempt takes effect, by relation, from the date of the adjudication of bankruptcy. The title vests in the trustee by operation of law, and without any conveyance. Provision has, however, been made both for official evidence of the trustee's title and for imparting notice thereof by public record. Black on Bankruptcy, (4th Ed.) § 753, p. 918. Section 21, sub. (e), of the act (9 U.S.Comp.Stat. 1916 Ann. p. 11299; 11 USCA § 44), declares that 'a certified copy of the order approving the bond of a trustee

shall constitute conclusive evidence of the vesting in him of the title to the property of the bankrupt, and if recorded shall impart the same notice that a deed from the bankrupt to the trustee if recorded would have imparted had not bankruptcy proceedings intervened.' Section 47, subd. (c), of the act (9 U.S.Comp.Stat.1916 Ann. p. 11459; 11 USCA § 75), provides that the trustee shall, within 30 days after the adjudication, file a certified copy of the decree of adjudication in the office where conveyances of real estate are recorded, in every county where the bankrupt owns real estate not exempt from execution.

* * *

"The petition in bankruptcy was filed in the United States District Court for the Northern District of Illinois. Madison county, in which the property in question is situated, is not within the territorial jurisdiction of that court. 2 U.S.Comp.Stat.1916 Ann. p. 1237; 28 USCA § 152. Neither a certified copy of the order approving the bond of the trustee in bankruptcy nor of the decree of adjudication was filed for record in Madison county, as required by the Bankruptcy Act. Wavra purchased and paid for the property relying upon the public records of that county, which showed the title to be in Max L. Goldberg and Phoebe Goldberg, his wife, as joint tenants, subject only to the mortgage to the Alton Building & Loan Association. He had the right to rely upon those records, unless he had notice of the bankruptcy proceeding, or there was something to lead a reasonable person to inquire whether there was an infirmity in the title. There is no pretense that he had such notice, or that any fact or circumstance imposed upon him the duty to make such inquiry. To charge him in the instant case with constructive notice of the pendency of the bankruptcy proceeding and of the appointment of the trus-

tee would be inconsistent with the purpose of the recording laws and with the settled principles of equity jurisprudence. Williams v. Jackson, 107 U. S. 478, 2 S.Ct. 814, 27 L.Ed. 529."

In the Vombrack case the Court held:

"Though, under Bankruptcy Act, § 70 (11 USCA § 110), title to bankrupt's property vests in trustee by operation of law, and does not depend on recording of certified copies of order approving trustee's bond or of adjudication under sections 21 e, 47 c (11 USCA §§ 44(e), 75(c), requiring disclosure of vesting of title to bankrupt's realty in trustee by public records of county in which property is situated, in absence of recording of such certificates, purchaser, in good faith and without notice relying on record title to realty in bankrupt, acquired good title under State Conveyancing Act, §§ 28, 30 (Smith-Hurd Rev.St.1927, c. 30, §§ 27, 29)."

In Derryberry v. Matterson, 193 La. 624 192 So. 78, the Supreme Court of Louisiana in 1939, said that under the Bankruptcy Law registration of the decree of adjudication and order approving the trustee's bond must be recorded in the county in which the real estate is situated in order to impart notice or affect title of a bona fide purchaser. In so holding, the Louisiana Court construed sec. 75(c) supra, and Title 11 of U.S.C.A. § 44, and cited with approval Beach v. Faust, 2 Cal.2d 290, 40 P.2d 822; and Vombrack v. Wavra, 331 Ill. 508, 163 N.E. 340.

In the Beach case, supra, the Supreme Court of California, in 1935, held:

"Transferee of grantee under quit claim deed who paid valuable consideration without notice that grantor at time of conveyance had been adjudicated a bankrupt HELD 'bona fide purchaser' of realty, and was protected by recording laws as against bankruptcy trustee's grantee, where no certified copy of decree of adjudication was filed in county where realty was located, and bankrupt did not include realty in schedule of assets (Civ.Code §§ 1213, 1214, 1217; Banks Act § 47 c, 11 USCA Sec. 75(c)."

The fact that the bankrupt did not include the realty in the schedule of his assets was not controlling but the fact that the trustee failed to file the necessary certifications was controlling.

In Harper v. Dothan Nat. Bank, 223 Ala. 26, 134 So. 623, the Alabama Supreme Court said:

"The act of Congress was not intended as in extension of 'the operation of the registration laws of the states beyond the effect given to them in the states.'"

The above cases, in my opinion, are based upon sound reasoning and support the general proposition that the Bankruptcy Act, in force and effect during the time involved herein, did not supersede our state's recording laws and the bankruptcy proceedings, in and of itself, did not operate as to give constructive notice that title to the minerals was vested in the Trustee in Bankruptcy by operation of law.

In the Vombrack case, supra, the Supreme Court of Illinois said:

"Rules concerning the transfer of property are primarily a matter of state regulation. Etheridge v. Sperry, 139 U.S. 266, 11 S.Ct. 565, 35 L.Ed. 171. In the absence of specific or particular provisions of the Bankruptcy Act, the law of the state determines the efficiency of acts and transactions to effect the transfer of the title to property, the time of passing of the title, and whether the recording or filing of an instrument is required, and, if so, as to whom it will be void for the failure to record it. 2 Ed. Remington on Bankruptcy (2d Ed.) §§ 1140, 1141."

The case then cites the Illinois statutory provisions concerning the necessity of filing instruments of record. I find it unnecessary to discuss our recording statutes

and the construction that we have placed upon them in this dissent as the necessity of filing is too well established.

Based on the above authorities, I am of the opinion that the Journal Entry of Judgment and Decree of Foreclosure entered by the District Court on July 25, 1936, was valid and binding against Cal-Cul, the bankrupt, its Trustee in Bankruptcy and its assigns.

I am also of the opinion that the purchaser of the mineral interest at the Trustee in Bankruptcy sale, was a purchaser pendente lite and has no greater rights than any other purchaser would have who purchased property after the same had been foreclosed in a mortgage foreclosure proceeding. The purchaser could receive no greater rights then the Trustee in Bankruptcy possessed and whatever rights the Trustee in Bankruptcy, had, in my opinion, were foreclosed in the mortgage foreclosure proceeding.

In State ex rel. Commissioners of Land Office v. Keller, et al., Okl., 264 P.2d 742, we held:

"In an action to foreclose a real estate mortgage, where one of the judgment debtors died after entry of final judgment and decree of foreclosure, a valid order of sale may be issued without making the heirs and representatives of said deceased defendant parties to said judgment, as provided by Section 589, O.S.1931, 12 O.S.A. § 1077; Ray v. Elson, 190 Okl. 245, 123 P.2d 245."

In Hart v. Pharaoh, Okl., 359 P.2d 1074, we held:

"A purchaser of real property from a party to a pending action is bound by the judgment rendered in such action against his grantor and acquires no greater right than his grantor. This rule applies without regard to the form of the action or whether the decree is erroneous."

For the foregoing reasons I am of the opinion the judgment of the trial court should be affirmed and I respectfully dissent to the opinion promulgated by a majority of my associates.

I am authorized to state that Mr. Justice WILLIAMS and Mr. Justice BERRY concur in the views herein expressed.