**STATE of Oklahoma, ex rel., Robert H. MACY, District Attorney of the Seventh Prosecutorial District, Appellee,**

v.

**THIRTY THOUSAND SEVEN HUNDRED EIGHTY ONE DOLLARS & NO/100 ($30,781.00), Jimmy Bolling and Richard Hughes, Claimants, Appellants.**

**No. 79975.**

Court of Appeals of Oklahoma, Division No. 1.

Nov. 2, 1993.

Otis W. Williams, Jr., Tulsa, for appellants.

Gretchen A. Crawford and John M. Jacobsen, Asst. Dist. Attys., Oklahoma City, for appellee.

## MEMORANDUM OPINION

ADAMS, Judge:

On September 19, 1989, the State filed a forfeiture action against $30,781.00 seized by a highway patrol trooper on August 24, 1989. Appellants Jimmy Bolling and Richard Hughes claimed the money, and now appeal the trial court's order granting the State's summary adjudication request and ordering forfeiture. Appellants claim the evidence is insufficient to support the trial court's order.[1]

When it filed its Motion for Summary Judgment, the State attached the affidavit of an Oklahoma Highway Patrol Trooper and two agents for the Oklahoma Bureau of Narcotics (OBN). The State also attached an affidavit of an investigator of the Meigs County, Ohio prosecutor's office and a certified copy of a "Judgment in a Criminal Case" against Appellant Hughes. Although Appellants responded to the State's motion, they did not attach any affidavits or other supporting documents to establish their claim that a material fact was still at issue.

The State contends that such documentation was required by Rule 13, Rules for District Courts of Oklahoma, 12 O.S.1991, Ch. 2, App. 1, and that Appellants' failure to do so required the trial court to grant the motion. We disagree. Appellants' inadequate response results only in an admission for purposes of summary adjudication of "[a]ll material facts set forth in the statement of the movant which are supported by admissible evidence." *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682 (Okla.App.1987).

Under such circumstances, the trial court, and this Court on appeal, has the duty

1. Appellants requested summary reversal pursuant to Rule 1.21, Rules on Perfecting a Civil Appeal, 12 O.S.1991, Ch. 15, App. 2, because the State did not timely designate those portions of the transcript containing evidence supporting the trial court's order. However, the rule contemplates evidence having been heard by the trial court which must be transcribed. In summary adjudications, no such evidence is presented or heard by the trial court, and the rule is inapplicable.

to insure that the motion is meritorious. Therefore, like the trial court, we must examine the evidentiary materials supporting the motion and if the movant has not addressed *all* of the material facts or if one or more such facts is not supported by admissible evidence, we must determine that judgment for the movant was not proper. *Spirgis,* 743 P.2d at 685.

■ In order for summary adjudication to be appropriate, not only must there be no dispute as to material facts, but all reasonable inferences and conclusions to be drawn from those facts must be in the movant's favor and show that the movant is entitled to judgment as a matter of law. *Runyon v. Reid,* 510 P.2d 943 (Okla.1973). The evidentiary materials must be viewed in the light most favorable to the party opposing summary adjudication. *Hargrave v. Canadian Valley Elec. Co-op.,* 792 P.2d 50 (Okla.1990). Moreover, any ruling on a motion for summary adjudication must be made on the record the parties have actually made and not upon one which is theoretically possible. *Daugherty v. Farmers Co-op. Ass'n,* 689 P.2d 947 (Okla.1984).

■ According to the State's evidentiary materials, on August 24, 1989, a trooper for the Oklahoma Highway Patrol stopped a car with Ohio license plates for making an illegal lane change. He advised the driver of the car, Jeffrey Whittington, that he had committed a traffic violation and later issued him a warning. There were two other passengers in the car, later identified as Robin Slater and Rick Lunsford. While running a check on the car, the trooper discovered it was owned by Jim E. Bolling of Nitro, West Virginia. When asked why he was driving Bolling's car, Whittington explained that they were friends and he had Bolling's permission to use it. Upon searching the car with Whittington's consent, the trooper found $14,000.00 in a "zip bag" in the front seat and $16,781.00 in a black carry on bag in the car trunk, for a total of $30,781.00. The trooper requested further assistance based on his experience and training that drug dealers carry large amounts of cash.

The trooper transported the three men to OBN headquarters and had the car towed to the same location in order to allow a "drug detector dog" to determine whether narcotics were present or had been present in the car or with the money. The dog, Bogey, made a positive alert "on a black carry on bag and along the edge of the front seat along the floor of the vehicle by biting and scratching." Thereafter, all three men executed affidavits indicating their consent to answer questions.

All three stated they were returning from California where they had gone to purchase a truck, but each gave different versions of the facts concerning the attempted truck purchase. Slater stated the purpose of the trip was to buy a truck for his uncle, Jimmy Bolling, and that Whittington had inspected a white 1983 Peterbilt truck. Whittington stated he could not remember the year or make of the truck, but that Slater had inspected it. Lunsford stated only that the truck was a blue 1980 Peterbilt. All three men refused to be re-interviewed. No narcotics were found in the car, and the three men were released. However, the money was seized, and the State filed forfeiture proceedings.

The affidavits of the two OBN agents detailed the two positive alerts made by Bogey and his certification and reliability as a drug detector dog. The investigator's affidavit described a voluntary interview with Lunsford on April 3, 1992, during which Lunsford stated that: 1) the purpose of a trip that he made with Slater and Whittington was to buy marijuana for Appellants and that Appellants had entrusted them with approximately $31,000.00 for that purpose; and 2) they tried to make an arrangement to purchase the marijuana but the deal fell through. According to the certified copy of the "Judgment in a Criminal Case," Appellant Hughes was found guilty in an Ohio federal court of one count of Conspiracy to Distribute Marijuana, and three counts of Possession with Intent to Distribute Marijuana, all offenses having occurred on June 14, 1990.

The State based its forfeiture claim on 63 O.S.1991 § 2–503(A)(6) and § 2–506(G), and

contended the evidentiary materials established without dispute that the money was intended to be used to purchase marijuana. According to those sections, the material fact that State must prove at the forfeiture hearing is that "the money was used, or was intended to be used, to facilitate any violation of the Uniform Controlled Dangerous Substances Act by a preponderance of the evidence."

We need look no further than the affidavit of one of the OBN agents to conclude that summary adjudication was not appropriate. The affidavit states, in relevant part, that "Robin Slater stated that the purpose of the trip was to buy a truck for his uncle. . . ." This statement clearly contradicts State's position that the money was intended to be used to purchase drugs. The State's evidentiary materials did not establish the absence of any controversy as to a material fact, and summary adjudication was inappropriate.

■ Unlike the dissent, however, we do not conclude the trial court was required to grant summary adjudication in favor of Appellants. The dissent's position rests on the conclusion that the State was required to show probable cause for the institution of the forfeiture. The federal authority upon which the dissent relies is inapplicable to a proceeding under Oklahoma's forfeiture laws.

■ The dissent correctly notes that Oklahoma law authorizes seizure of forfeitable material only upon probable cause. However, as recognized in *U.S. v. $191,910.00 in U.S. Currency,* 788 F.Supp. 1090 (N.D.Cal. 1992), a case cited by the dissent, lack of probable cause for the initial seizure violates the Fourth Amendment to the United States Constitution and requires exclusion of the seized material as evidence,[2] but improper seizure does not immunize that material from forfeiture. *See also United States v. One 1977 Mercedes Benz 450 SEL,* 708 F.2d 444 (9th Cir.1983). Nothing in Oklahoma's for-

feiture statutes suggests a different conclusion.

Nevertheless, the dissent, relying upon cases premised upon the federal statutes, concludes the State must show probable cause for the institution of the forfeiture and may not rely on evidence obtained after that forfeiture. This view overlooks a major distinction between the federal statutes and our own. As acknowledged in *U.S. v. $191,910.00 in U.S. Currency,* the government in federal forfeiture proceedings has the burden of demonstrating that probable cause existed for the institution of the forfeiture proceeding. If that burden is satisfied, the person claiming the material has the burden of proving the material is not subject to forfeiture.

However, Oklahoma has no similar statutory provision. The State always has the burden of proving the material is subject to forfeiture. 63 O.S.1991 § 2–506(G). Since the seized material is not immunized from forfeiture merely because probable cause did not exist to seize it initially and there is no statutory requirement for probable cause to initiate the forfeiture proceeding, there is no reason why the State should not be allowed to use evidence obtained after the filing of the action to support its position.

■ Finally, on this record, we cannot agree with the dissent that the dog-sniff evidence is without probative value. The dissent's conclusions are primarily based on *Jones v. United States Drug Enforcement Administration,* 819 F.Supp. 698 (M.D.Tenn. 1993). The opinion in *Jones* indicates evidence concerning the widespread nature of drug-contaminated currency was introduced. The Appellants offered no such evidence.

On this record, none of the parties was entitled to summary adjudication. The trial court's order is reversed, and the case is remanded for further proceedings provided by law.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

---

**2.** Appellants make no argument on appeal for exclusion of the money as evidence because of an

alleged Fourth Amendment violation.

JONES, P.J., concurs.

HANSEN, C.J., dissents with separate opinion.

HANSEN, Chief Judge, dissenting:

I dissent from the majority's remand of this case. Clearly the trial court erred in granting State's Motion for Summary Judgment. State presented no admissible facts in conjunction with its Motion for Summary Judgment to prove a crime had been committed or that the money seized was forfeitable under the Act.

This appeal involves a forfeiture of property under the Uniform Controlled Dangerous Substances Act, 63 O.S.1991 § 2–101 et seq. The facts as set out in State's Motion for Summary Judgment are as follows, in pertinent part:

1. A highway patrol trooper stopped an automobile with Ohio plates for making an illegal lane change.

2. Jeffrey Whittington was driving the car. Robin Slater and Rick Lunsford were passengers in the car.

3. Another party, Jim Bolling, owned the car.

4. Whittington consented to the trooper searching the car. The trooper found $30,781.00 in two bags in the car.

5. The trooper requested further assistance because he knew drug dealers carry large amounts of cash.

6. Bogey, a drug detecting dog made a positive alert that narcotics had been present in two places in the car.

7. The trooper found no drugs in the car.

8. After detaining the individuals for questioning, they were released.

9. No charges were filed against any of the individuals.

10. State seized the money and gave notice of forfeiture filed in September of 1989.

State attached to its Motion for Summary Judgment an affidavit of the trooper who stopped the car, and affidavits of two agents for the Oklahoma Bureau of Narcotics, stating the dog had told them that he found the scent of narcotics in the car indicating the money had been in close proximity to narcotics. However, Bogey did not identify the particular narcotic he said he sniffed. State also attached an affidavit of an investigator for Meigs County in Ohio. That affidavit stated that on April 3, 1992, long after the money was seized, he taped an interview with Lunsford where he stated the purpose of the trip he took that fateful day was to buy marijuana. Also attached to the motion was a judgment, dated in June of 1990, again long after the money was seized, against Hughes on a plea of guilty to possession with intent to distribute marijuana. Included in the record are affidavits of Lunsford and Slater disclaiming any drug related or other criminal activity.

Section 2–504 of the Act provides that any peace officer shall seize property subject to forfeiture under the act when:

4. Probable cause exists to believe the property has been used, or will be used, in violation of this act.

Under the facts and circumstances of this case, the officers had no probable cause to believe the money was used or would be used in violation of the act. Therefore, the property was not subject to seizure.

As noted in *U.S. v. $191,910.00 in U.S. Currency,* 788 F.Supp. 1090, 1096 (N.D.Cal. 1992), probable cause must exist for the *institution of the forfeiture.* Thus, evidence obtained subsequent to the filing of the forfeiture may not be considered in determining probable cause. The Tennessee District Court in *Jones v. United States Drug Enforcement Administration,* 819 F.Supp. 698 (M.D.Tenn.1993) cited that decision with approval and pointed out the mere fact a traveler matches some elements of the drug courier profile does not amount to even articulable suspicion, much less probable cause.

As in *Jones,* the evidence of the narcotic-trained dog's "alert" to the currency is of

extremely little probative weight. That Court made the following findings:

As the Drug Enforcement Administration's own chemists reported.... currency in general circulation in this country is contaminated with traces of narcotics. Specifically, the chemist found that one-third of the bills in a randomly selected sample were contaminated with between 2.4 and 12.3 nanograms of cocaine per bill. ... The belts used at Federal Reserve Banks to sort currency were contaminated with approximately 200 nanograms of cocaine per belt. *Jones,* at p. 720.

The Court also cited a study by Florida Dade County Medical Examiner's Office, stating:

97% of the bills from around the country tested positively for cocaine, and noting that clean bills are contaminated in banks when they come in contact with contaminated ones. *Jones,* at p. 720.

The presence of trace narcotics on currency does not yield any relevant information whatsoever about the currency's history.[1] We agree with these federal courts, that the dog's alert to the presence of narcotics on the bills, without the finding of narcotics, is not probable cause to seize the money.

Our State and Federal Constitutions prohibit the taking of property without compensation or due process of law. Although our forfeiture statutes do not violate these constitutions in that the forfeiture is punishment for a violation of law,[2] our laws do not create a police state[3] In a civil forfeiture proceeding, the crime need not be proved beyond a reasonable doubt, but the forfeiture must still be in response to a criminal act. The $30,781.00 was not found in close proximity to any forfeitable substances. 63 O.S.1991 § 2-503(A)(7). There is nothing remotely criminal in possessing $30,781.00. There was no rational basis for the initial seizure of the money. Accordingly, there was no basis for

forfeiture as punishment. The trial court should have granted judgment in favor of the money, without hesitation.

---

1. *See,* Curriden, *Courts Reject Drug–Tainted Evidence,* 79 A.B.A.J. 22, (August 1993).

2. *Richard Lyle Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

