ONB BANK AND TRUST CO. v. KWOK



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ONB BANK AND TRUST CO. v. KWOK

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ONB BANK AND TRUST CO. v. KWOK
2018 OK CIV APP 33
417 P.3d 393
Case Number: 114871; Cons. w/114875
Decided: 10/16/2017
Mandate Issued: 04/25/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 33, 417 P.3d 393

 

ONB BANK AND TRUST COMPANY, Plaintiff,
v.
JULIA KWOK and WILLIAM R. SATTERFIELD, Defendants/Appellants,
v.
MINGO ENERGY, LLC, Intervenor/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DANA LYNN KUEHN, TRIAL JUDGE

AFFIRMED

John W. Moody, Tulsa, Oklahoma, for Defendant/Appellant Julia Kwok

E. Diane Hinkle, Bartlesville, Oklahoma, for Defendant/Appellant William R. Satterfield

Michael D. Colvin, Jude T. Barreneche, FIDELITY NATIONAL LAW GROUP, Dallas, Texas, and

Garry M. Gaskins, II, Logan L. James, DRUMMOND LAW, PLLC, Tulsa, Oklahoma, for Intervenor/Appellee

JANE P. WISEMAN, JUDGE:

¶1 Appellants Julia Kwok and William R. Satterfield appeal from a trial court order quieting title in favor of Intervenor and Appellee Mingo Energy, LLC. After review, we find no error and affirm.

BACKGROUND

¶2 The parties are familiar with the lengthy history, facts, and proceedings of this case, and we will repeat only the pertinent ones here. ONB Bank and Trust Company filed this quiet title action against Appellants claiming fee simple ownership of the surface interest of real property described as "[t]he West Half of the Southeast Quarter of the Southwest Quarter (W/2 SE/4 SW/4) of Section Twelve (12), Township Eighteen (18) North, Range Twelve (12) East of the Indian Base and Meridian, Tulsa County, State of Oklahoma, according to the U.S. Government Survey thereof." ONB alleged it "acquired interest and title in and to" the property and another tract of land through a sheriff's deed in June 2011, but later conveyed the property to Mingo Industries, LLC.

¶3 In response, Satterfield claimed "title to the subject property was not properly foreclosed in the non-judicial sale" because, after he received notice of the sale, he timely mailed his notice to the mortgagee that the property was his homestead and he elected judicial foreclosure. Kwok claims title by virtue of a quitclaim deed from Satterfield.

¶4 After ONB filed a motion for summary judgment, Appellants in a joint objection to the motion argued that the Oklahoma Power of Sale Mortgage Foreclosure Act (OPSMFA) does not support a judgment in ONB's favor. They claimed the notice of sale from Nationwide Capital Group, Inc., mistakenly directed Satterfield to file his objection in Oklahoma County, rather than Tulsa County where the property is located. Appellants asserted, "Despite the defective notice, the Tulsa County records reflect that on May 16, 2007, [Satterfield] sent notice via certified mail to [Nationwide] objecting to said sale and requesting a judicial foreclosure as required by Title 42 O.S. §45." They asserted that pursuant to 46 O.S. § 43, after Nationwide received the objection, it was required to pursue foreclosure by judicial proceeding. Appellants asserted the sale was null and void because the non-judicial sale failed to comply with the OPSMFA.

¶5 The trial court granted ONB's motion for summary judgment. A different division of this Court in Case No. 111,584 reversed the trial court's decision and remanded the case for further proceedings. The Court stated it reversed the trial court's decision on the ground that:

the record establishes the presence of contested issues of material fact as to whether (1) Satterfield gave notice of his homestead claim and election for judicial foreclosure, (2) subsequent purchasers were put on inquiry of his claim, and (3) Satterfield had knowledge of the proceedings subsequent to his election for judicial foreclosure.

The Court stated:

ONB moved for summary judgment, asserting the dispute was controlled by 46 O.S. 2011 §47(A), which provides in part,

"The mortgagee's deed shall raise a presumption of compliance with the requirements of this act regarding the exercise of the power of sale and the sale of the property, including the giving of the notice of intention to foreclose and of sale and the conduct of the sale. Such deed shall constitute conclusive evidence of the meeting of such requirements in favor of purchasers for value and without actual notice so long as the failure to meet those requirements would otherwise render the sale only voidable and, even if the sale is void, after the passage of two (2) years from the date of the recording of the deed."

ONB submitted evidence showing the mortgagee's deed, conveying the property from Nationwide as mortgagee to Nationwide as buyer, was recorded July 11, 2007, and a deed from Nationwide to 75 Enterprises, L.L.C., with documentary stamps of $330.00. It submitted evidence that ONB became the owner of the property by sheriff's deed upon foreclosure of a mortgage from 75 Enterprises, L.L.C. ONB argued the mortgagee's deed became conclusive evidence of meeting the Act's requirements after the passage of two years from the date the deed was recorded.

In response, Satterfield argued that the "conclusive evidence" clause did not apply in this case because the grantee in the mortgagee's deed was not a bona fide purchaser for value without actual notice, inasmuch as Nationwide took title from itself. He argues the subsequent purchasers were not without notice, because his notice of homestead claim and election for judicial foreclosure were filed of record.

The trial court granted summary judgment in favor of ONB, making extensive findings of fact, including that over the past five years, the property had been conveyed to a third party who mortgaged it and a judicial foreclosure of that mortgage has been completed, resulting in a Sheriff's Deed to ONB. The trial court concluded that Satterfield and his grantee Kwok were "estopped by laches since the filing of the Sheriff's Deed in 2007 from asserting any claims now." It awarded ONB's attorney an attorney fee of $3,500.00 plus court costs and statutory post-judgment interest.

The Court noted that the OPSMFA "sets forth the procedure for foreclosing a mortgage in which the mortgagor has conferred upon the mortgagee the power to sell the mortgaged property. 46 O.S. 2011 §43(A)(2)." The OPSMFA, however, specifically provides that the Act "'shall not apply to . . . [a] mortgage on the mortgagor's homestead if, after the notice of sale is given to the mortgagor pursuant to subsection B of [§45], the mortgagor elects judicial foreclosure in compliance with the provisions of subparagraphs b and c of paragraph 2 of subsection A of [§ 43]' [46 O.S.2011 § 41(7)]." The Court also cited 46 O.S.2011 § 43(A)(2)(b) which provides:

[I]n a mortgage transaction involving the mortgagor's homestead, if the mortgagor, at least ten (10) days before the property is to be sold under the power of sale, sends written notice by certified mail to the mortgagee stating that the property involved is the mortgagor's homestead and that judicial foreclosure is elected, and files of record a copy of such notice which contains the legal description of the property in the office of the county clerk of the county where the property is located, the mortgagee must pursue any foreclosure by judicial proceeding in a court of competent jurisdiction; provided, however, the mortgagee may contest the mortgagor's claim of homestead in the judicial foreclosure action or in another action such as by declaratory judgment . . . .

¶6 The Court stated: "In the present case, Satterfield put on evidence he complied with the procedure, as set forth in the notice he received, for claiming homestead and electing foreclosure. He put on evidence his failure to timely file the election in the land records was caused by neglect excusable by the mistake in the notice of sale." The Court noted that Satterfield's "election letter to Nationwide's attorney on its face stated it was sent by certified mail and included a tracking number." Satterfield's filings, however, did "not include a green card showing the attorney received the letter." The Court concluded, "This evidence establishes a contested issue of material fact as to whether Satterfield timely elected judicial foreclosure. If he did, the Act no longer applied and Nationwide was required to foreclose judicially."

¶7 The Court stated:

Section 45 of the Act provides that the mortgagee's deed is conclusive evidence of the meeting of the Act's requirements after the passage of two years from the date the deed was recorded, but only "in favor of purchasers for value and without actual notice." However, if the Act no longer applied because Satterfield elected judicial foreclosure, then this section cannot save the sale that took place after the election. On the other hand, if Satterfield did not timely elect judicial foreclosure, purchasers for value and without actual notice were entitled to rely on the Mortgagee's Deed pursuant to §45.

A purchaser of land takes the property with constructive notice of whatever appears in the conveyances constituting the chain of title. Creek Land & Imp. Co. v. Davis, 1911 OK 85, 28 Okla. 579, 115 P. 468. If those documents present sufficient facts to put a prudent person on inquiry, the purchaser will be charged with actual notice of whatever reasonable inquiry would have disclosed. Id. Filing instruments of record is constructive notice only to those subsequent in the chain of title, not to those prior in the chain of title. Straub v. Swaim, 296 P.2d 147, 148-149 (Okla.1956).

Satterfield filed his election of record in the office of the County Clerk of Oklahoma County after the sale of the property but before the Mortgagee's Deed was filed. This record raises a fact issue regarding whether this filing would put a prudent person on inquiry, so as to charge a subsequent purchaser with actual knowledge of his claim.

The trial court based its summary judgment ruling on estoppel by laches, finding Satterfield and Kwok were "estopped by laches since the filing of the Sheriff's Deed in 2007 from asserting any claims now." The doctrine of laches is available only in equitable matters. Skinner v. Scott, 1911 OK 282, ¶5, 118 P. 394, 396. The time that will constitute a bar to an action varies and is determined by the circumstances of each case. Id. The party invoking the laches defense must show (1) unreasonable delay, (2) coupled with knowledge of the relevant facts, (3) resulting in prejudice. Smith v. Baptist Foundation of Oklahoma, 2002 OK 57, ¶9, 50 P.3d 1132, 1138.

The record in this case lacks evidence that Satterfield knew about any of the proceedings subsequent to his demand for judicial foreclosure. Satterfield is not charged with constructive knowledge of filings subsequent to his interest. The Affidavit of Compliance with Oklahoma Power of Sale Mortgage Foreclosure Act contains no certificate of mailing, and the record contains no certified mail receipt dated before the affidavit's existence, as the trial court found. The record contains no 2007 Sheriff's Deed as cited by the trial court. If one or more material facts is not supported by admissible evidence, we must determine that judgment for the movant was not proper. State ex rel. Macy v. Thirty Thousand Seven Hundred Eighty [O]ne Dollars & No/100, 1993 OK CIV APP 170, ¶4, 865 P.2d 1262.

¶8 The Court of Civil Appeals concluded the trial court erred in granting summary judgment because issues of material fact remained "as to whether (1) Satterfield gave notice of his homestead claim and election for judicial foreclosure, (2) subsequent purchasers were put on inquiry of his claim, and (3) Satterfield had knowledge of the proceedings subsequent to his election for judicial foreclosure."

¶9 After remand, the trial court on July 15, 2014, granted the motion to intervene filed by Mingo Energy, LLC. In its petition to quiet title, Mingo Energy asserted it had fee simple ownership and actual possession of the property and asked the trial court to quiet title in its favor against Appellants.

¶10 A non-jury trial was held on January 19, 20, and 21, 2016. The trial court issued its findings of facts and conclusions of law on March 4, 2016, which we summarize in the following paragraphs.

¶11 This case involves two tracts of land--a 20-acre tract and a 9.76-acre tract adjacent to the 20-acre tract. Satterfield obtained a mortgage from Bank of America in September 2001 secured by both tracts of land. He defaulted on the mortgage, and in August 2004, he filed a petition for Chapter 11 Bankruptcy in the Northern District of Oklahoma, in which he claimed a homestead exemption on three properties, including both the 9.76-acre tract and the 20-acre tract.

¶12 Satterfield filed an application for homestead exemption for the 9.76-acre tract with the Tulsa County Assessor on February 27, 2006. After a request from Bank of America, the Bankruptcy Court lifted the bankruptcy stay and authorized sale of the 20-acre property "through litigation or pursuant to Oklahoma's non-judicial power of sale foreclosure act." On April 10, 2006, in a pleading in the Bankruptcy Court, Satterfield "specifically repudiate[d] his claim for homestead exemption on the 20 Acre Tract filed in his original bankruptcy schedules." Satterfield also made "a judicial admission that the 9.76 Acre Tract . . . is his primary residence and is the only property on which he is claiming a homestead exemption." He later "judicially admitted he was only entitled to a homestead exemption in one acre of the 9.76 Acre Tract."[1] The Bankruptcy Court held that he was limited to a homestead exemption of $5,000 in the 9.76-acre tract. Kevin Blaney, attorney for Bank of America, on June 15, 2006, mailed a "Notice of Intent to Foreclose by Power of Sale" on both tracts to Satterfield and the bankruptcy trustee. Bank of America assigned its interest in the note to Nationwide Capital Group, Inc., and the assignment was recorded in Tulsa County on October 30, 2006. Blaney, again as attorney for Nationwide, filed an amended notice of sale in January 2007, which provided a non-judicial foreclosure for both tracts would occur on March 29, 2007. Blaney issued a notice of postponed sale on May 9, 2007. Satterfield sent a letter to Blaney on May 16, 2007, acknowledging receipt of the notice of postponed sale, claiming a homestead exemption in both tracts, electing judicial foreclosure of the homestead, and electing against a deficiency judgment.

¶13 Satterfield filed an application for stay in the Bankruptcy Court in which he requested a stay of the non-judicial foreclosure of both tracts. The Court noted that Satterfield claimed his primary residence is on the smaller tract adjoining the larger tract and that he asked the Bankruptcy Court to stay the non-judicial foreclosure. The Bankruptcy Court denied Satterfield's application.

¶14 On the day listed in the notice of postponed sale, May 31, 2007, "the Mortgagee withdrew the 9.76 Acre Tract from the sale via oral announcement" but the 20-acre tract was sold to Nationwide Capital Group, Inc. Satterfield's letter giving notice that he wanted a judicial foreclosure was misrouted to the Oklahoma County Clerk's office and was not filed in Tulsa County until June 22, 2007. Satterfield was incarcerated from January 2005 until September 1, 2008, after being convicted of odometer tampering and conspiracy.

¶15 Nationwide conveyed the property to 75 Enterprises, LLC, and the deed was recorded on August 7, 2008. In July 2008, 75 Enterprises executed a mortgage in favor of ONB, and granted a security interest in the 20-acre tract to ONB. 75 Enterprises defaulted and ONB foreclosed its interest in the property. The 20-acre tract was sold at sheriff's sale, where ONB reclaimed title to the tract. ONB conveyed the 20-acre tract to Mingo Industries, LLC, in October 2011. Mingo Industries, LLC, in turn conveyed the 20-acre tract to Mingo Energy, LLC, in January 2014.

¶16 Satterfield asked Kwok in December 2010 "to purchase his house and thirty acres (29.76 acres) as he was having financial difficulties." Satterfield represented to "Kwok that he owned the house and the thirty acres and that she would be purchasing all thirty acres." Kwok brought the property taxes up to date and "paid Nationwide Capital $194,000 for what she thought was the house and thirty acres." On August 3, 2011, "Satterfield signed and filed with the Tulsa County Clerk a Quit Claim Deed for the 20 Acre Tract . . . attempting to convey it to Defendant Kwok." Kwok became aware she had purchased only 9.76 acres and the house on it, and not the 20-acre tract, only when she received a letter from ONB. As found by the trial court, "Kwok, a real estate investor and accomplished financial professor, never questioned why Defendant Satterfield would need to deed her [the] property she already purchased and closed on with Nationwide Capital."

¶17 The trial court noted that to decide whether Mingo Energy or Kwok has title to the 20-acre tract, it must determine when Satterfield lost title to the property. As part of this determination, the court was required to "decide when and what of his property was exempted as homestead, and whether or not he timely requested judicial foreclosure proceedings under [46 O.S. § 43]."

¶18 The court found that Mingo Energy is the holder of legal title because at the time Satterfield filed Chapter 11 bankruptcy, which was later converted to a Chapter 7 bankruptcy, all of his property, including the 20-acre tract, became property of the bankruptcy estate. All of the bankruptcy estate's property was transferred to the bankruptcy trustee, Patrick Malloy, upon his appointment, "inuring to him all of Satterfield's rights and benefits associated in the property." Malloy did not abandon the 20-acre tract nor was it exempt. The court concluded, "As such, at the time of Satterfield's May 16, 2007 election for judicial sale, all ownership rights to the property had already been vested in the Trustee and divested from Satterfield." Satterfield did not have standing to make a homestead exemption claim or request a judicial foreclosure because he had no ownership rights in the 20-acre tract. Only Malloy "had standing and could make such demand, which [he] never did." Because Satterfield had no ownership rights, he could not convey ownership of the 20-acre tract to Kwok in August 2011. The court further found that the Bankruptcy Court had found that the 20-acre tract was not Satterfield's homestead and had allowed the non-judicial foreclosure of that tract to go forward. The trial court stated it "will honor under res judicata all Orders which pertain to this matter and issued by the United States Bankruptcy Court." Accordingly, the trial court adopted the Bankruptcy Court's conclusion that the 20-acre tract did not qualify for homestead exemption.

¶19 The court also found that "all notices of the sale were in accordance with Title 46, and the Bank reacted appropriately upon receiving the May 16, 2007 letter from Satterfield which tried to elect judicial foreclosure on both the 9.76 Acre Tract and the 20 Acre Tract." The court found that Kevin Blaney "made a legally permissible bifurcation under the mortgage agreement to withdraw the 9.76 Acre Tract from the non-judicial foreclosure sale and continue with the Title 46 Power of Sale proceeding as to the 20 Acre Tract." It concluded the sale of the 20-acre tract was appropriate because neither Satterfield nor Kwok had any ownership interest in that tract.

¶20 Finally, the court concluded Satterfield intentionally clouded the title to the 20-acre tract by purporting to convey it to Kwok and that Kwok continued to cloud Mingo Energy's title by refusing to quitclaim the property.

¶21 The court held Mingo Energy is the owner of the 20-acre tract in fee simple and is entitled to possession of the property. The court perpetually enjoined both Kwok and Satterfield from claiming any right, title, or interest in the 20-acre tract and adjudged Mingo Energy to have superior right, title, and interest to the property.

¶22 Kwok and Satterfield appeal.

STANDARD OF REVIEW

¶23 "An action to quiet title is one of equitable cognizance." Sullivan v. Buckhorn Ranch P'ship, 2005 OK 41, n. 30, 119 P.3d 192. "[O]n review we must accord deference to the trial court's determination of the facts." In re Estate of Brown, 2016 OK 112, ¶ 2, 384 P.3d 496. "The trial judge has the opportunity to observe the conduct and demeanor of the witnesses, and we will not disturb the trial court's findings of fact unless they are clearly contrary to the weight of the evidence or to some governing principle of law." Id.

ANALYSIS

¶24 We see no error by the trial court in quieting title to the property in favor of Mingo Energy. The trial court correctly concluded that the 20-acre tract became property of the bankruptcy estate after Satterfield filed bankruptcy and that ownership rights to the property became vested in Malloy as the trustee after his appointment. In Viersen v. Boettcher, 1963 OK 262, ¶ 0, 387 P.2d 133 (syl. no. 2 by the Court), the Oklahoma Supreme Court explained:

In federal court bankruptcy proceedings, title to the assets of the bankrupt vests in the trustee in bankruptcy on the filing of a petition under the bankruptcy law, and that title is not subject to divestiture by judgment in an action against the bankrupt, commenced after bankruptcy, to which the trustee is not a party.

In Brumfiel v. U.S. Bank, 618 F. App'x 933, 937 (10th Cir. 2015), the Tenth Circuit Court of Appeals stated:

Under 11 U.S.C. § 541(a)(1), the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." When a Chapter 7 bankruptcy petition is filed, "[t]he trustee of the bankruptcy estate has the sole capacity to sue and be sued over assets of the estate." Mauerhan v. Wagner Corp., 649 F.3d 1180, 1184 n. 3 (10th Cir.2011) (citing 11 U.S.C. § 323(b)).

¶25 In Gunartt v. Fifth Third Bank, 355 F. App'x 66, 68 (7th Cir. 2009), the Seventh Circuit Court of Appeals held the Bankruptcy Court "correctly concluded, [the debtor] lacked standing to pursue [claims against a bank challenging a foreclosure] because at the commencement of his bankruptcy, all of his property, including the claims against the bank, became part of the bankruptcy estate, giving the trustee exclusive standing to litigate the claims." In In re Failla, 838 F.3d 1170, 1173 (11th Cir. 2016), the Eleventh Circuit Court of Appeals described the issue before the Court as "whether a person who agrees to 'surrender' his house in bankruptcy may oppose a foreclosure action in state court." The Eleventh Circuit agreed "with the bankruptcy court and the district court that 'surrender' requires debtors to drop their opposition to a foreclosure action." Id. at 1176. The Court stated, "Debtors who surrender property must get out of the creditor's way." Id. at 1177.

¶26 Here, the Bankruptcy Court authorized sale of the property "through litigation or pursuant to Oklahoma's non-judicial power of sale foreclosure act." The Bankruptcy Court found, through the application of Oklahoma law, specifically 31 O.S. § 2, that Satterfield was entitled, not to the property itself, but to the sum of $5,000 as his homestead exemption in the 9.76-acre tract. Section 2(C) provides:

The homestead of any person within any city or town, owned and occupied as a residence only, or used for both residential and business purposes, shall consist of not exceeding one (1) acre of land, to be selected by the owner.

For purposes of this subsection, at least seventy-five percent (75%) of the total square foot area of the improvements for which a homestead exemption is claimed must be used as the principal residence in order to qualify for the exemption. If more than twenty-five percent (25%) of the total square foot area of the improvements for which a homestead exemption is claimed is used for business purposes, the homestead exemption amount shall not exceed Five Thousand Dollars ($5,000.00).

31 O.S.2011 § 2(C). The Bankruptcy Court found that 57.99 percent, at a minimum, of the house on the 9.76 acres was used for business purposes as an event venue, and therefore Satterfield was entitled to claim as a homestead exemption only the sum of $5,000. The trial court found Satterfield made "a judicial admission that the 9.76 Acre Tract . . . is his primary residence and is the only property on which he is claiming a homestead exemption." He later also "judicially admitted he was only entitled to a homestead exemption in one acre of the 9.76 Acre Tract."

¶27 The trial court adopted the Bankruptcy Court's conclusion that the 20-acre tract did not qualify for homestead exemption and further found the trustee had not abandoned the property. The trustee had not objected to lifting the automatic stay and, as the trial court found, was directed by the Bankruptcy Court's order to sell the property within 120 days of the order or foreclosure would proceed if no sale had been reached. The Bankruptcy Court authorized a non-judicial foreclosure, the mortgagee conducted a non-judicial foreclosure, and Satterfield admittedly had notice of that sale.

¶28 The trial court's decision to quiet title is neither against the clear weight of the evidence nor contrary to law. Satterfield admitted in the bankruptcy proceeding that he was not entitled to a homestead exemption on the 20-acre tract. He then continued to pursue a homestead exemption claim on this property, and thus oppose the foreclosure of the property, after the Bankruptcy Court lifted the automatic stay, allowing the mortgagee to pursue such foreclosure. Appellants do not explain or even address in their appellate briefing how they can have it both ways--confess that the 20-acre tract was not subject to any homestead exemption and simultaneously assert homestead rights to the property entitling Satterfield to certain protections in a non-judicial sale.

¶29 As a final matter, we reject Kwok's and Satterfield's arguments regarding the settled law of the case and the effect of the previous Court of Civil Appeals' opinion. After review of the summary judgment record in the previous appeal, another division of this Court listed three issues of material fact requiring reversal and further proceedings on remand. If the appellate court reverses a judgment and remands the case, "it returns to the trial court as if it had never been decided, save only for the 'settled law' of the case." Smedsrud v. Powell, 2002 OK 87, ¶ 13, 61 P.3d 891. After the mandate issues, "[t]he parties are relegated to their prejudgment status and are free to re-plead or re-press their claims as well as defenses." Id. (emphasis omitted). Except to the extent that the appellate court ruling becomes the settled-law-of-the-case, "the parties are entitled to introduce additional evidence, supplement the pleadings and expand the issues" on remand. Parker v. Elam, 1992 OK 32, ¶ 13, 829 P.2d 677.

¶30 We see nothing in the record to indicate that the issues regarding the Bankruptcy Court's previous rulings and their effect--and the undisputed fact that the property was part of the bankruptcy estate--were considered by this Court in the previous appeal. Nor is there anything in the Opinion restricting the parties exclusively to those three fact issues. If additional material facts surfaced and were disputed by the parties on remand, there is nothing in the Opinion in Case No. 111,584, or in the settled-law-of-the-case doctrine, to prohibit their consideration. To the contrary, we find nothing in the "settled law" in the Opinion which would control or conflict with the issues raised in this appeal. After reversal of the summary judgment and remand, the case was tried to the court, the trial court considered the evidence presented and the arguments of counsel, and decided the case on the merits as set forth in the court's extensive, detailed findings of fact and conclusions of law.

CONCLUSION

¶31 Having examined the record on appeal and finding no error, we affirm the trial court's order.

¶32 AFFIRMED.

THORNBRUGH, V.C.J., and BARNES, P.J., concur.

FOOTNOTES

[1] It is not disputed that because the house and the 9.76-acre tract on which it sits are located within the city limits of Tulsa, the homestead exemption, in the absence of other factors, is limited to one acre of the overall 9.76 acres, as we discuss below. 31 O.S.2011 § 2(C).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 170, 865 P.2d 1262, 65 OBJ 160, State ex rel. Macy v. Thirty Thousand Seven Hundred Eighty one Dollars & No/100
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 32, 829 P.2d 677, 63 OBJ 696, Parker v. Elam
Discussed
 1956 OK 97, 296 P.2d 147, STRAUB v. SWAIM
Cited
 1963 OK 262, 387 P.2d 133, VIERSEN v. BOETTCHER
Discussed
 2002 OK 57, 50 P.3d 1132, SMITH v. BAPTIST FOUNDATION OF OKLAHOMA
Discussed
 2002 OK 87, 61 P.3d 891, SMEDSRUD v. POWELL
Discussed
 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIP
Discussed
 2016 OK 112, 384 P.3d 496, BROWN v. ALLEY
Discussed
 1911 OK 282, 118 P. 394, 29 Okla. 364, SKINNER v. SCOTT
Discussed
 1911 OK 85, 115 P. 468, 28 Okla. 579, CREEK LAND & IMPROVEMENT CO. v. DAVIS
Discussed at Length
Title 31. Homestead and Exemptions
 Cite
Name
Level

 31 O.S. 2, Homestead - Area and Value - Indian Allottees - Temporary Renting
Discussed at Length
Title 42. Liens
 Cite
Name
Level

 42 O.S. 45, Lien of Insurance Agent
Cited
Title 46. Mortgages
 Cite
Name
Level

 46 O.S. 41, Scope
Cited
 46 O.S. 43, Power of Sale
Discussed at Length
 46 O.S. 47, Closing
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA